ARKANSAS STORES, INC. *v.* McCLENDON.

4-8562                                    214 S. W. 2d 61

Opinion delivered October 18, 1948.

*Glenn F. Walther* and *House, Moses & Holmes,* for appellant.

*Coffelt & McDonald,* for appellee.

GRIFFIN SMITH, Chief Justice. By contract of June 14, 1946, Cecil McClendon began business at Benton as an Arkansas Stores Associate Dealer under covenant to make all purchases of merchandise from appellant when the goods were intended for resale. The undertaking, by

express terms of the contract, was terminable on notice of thirty days if given by either party.

Appellant is not a manufacturer, but purchases in large quantities for a number of associate stores, thereby procuring price concessions. For its services appellant received a commission of ten percent.

In February 1947 appellant sued for an alleged balance of $1,233.32, attaching to the complaint an itemized statement. In his answer McClendon copied § 6 of the contract: "Party of the Second Part shall not be required to purchase any merchandise not wanted." This, said McClendon, was his "complete defense." By way of cross-complaint he alleged failure of the plaintiff to supply goods that were ordered and could have been furnished, and a consequential damage of $5,000 because of non-delivery. Upon trial the verdict was, "We, the jury, find for the defendant, Cecil McClendon, in the sum of $2,500." Judgment, and the Court's action in overruling the Corporation's motion for a new trial, resulted in this appeal.

Although McClendon handled a variety of merchandise after contracting with appellant, the bulk of his business appears to have been automobile and truck tires manufactured by the Firestone Company, although other things were sold, including refrigerators, shotguns, bicycles, radio sets, etc. McClendon concedes that during the first two months—that is, June and July of 1946— the flow of goods to his place of business was reasonably satisfactory. In fact, there was an arrangement whereby appellant as procurer directed that salable articles be sent to McClendon even though not ordered. These were returnable at McClendon's discretion. Transactions of this nature resulted in frequent credit entries, and for several months no questions arose.

Appellant contends the indebtedness accumulating between November 20th and December 20th amounted to $1,233.32, and that in spite of repeated statements, personal importunities, and a final withdrawal of credit, the account went unpaid. Appellee's defense is that from time to time his business was glutted with over-shipments

representing commodities "automatically" supplied, and that when attempts were made to procure credit by leaving the goods at "the Firestone Warehouse at 555," arguments occasionally ensued, with an absolute refusal to receive them. Appellant denied it was connected with 555 in a sense authorizing the latter to receive shipments sent to Little Rock for McClendon's credit. However, there was testimony that articles so sent had been accepted, hence a question of fact was presented and the jury could have found that acquiescence by appellant established a custom upon which appellee might rely. Appellant also testified, through its manager, that particular goods for which McClendon asked credit under the return privilege, had been accepted and paid for, hence as to such charges the books had been closed.

There is testimony in support of appellee's cross-complaint that he was damaged to the extent of $5,000 through appellant's willful failure to supply merchandise for which there was ready consumer demand, such as radio sets, electric refrigerators, bicycles, shotguns, and the like. During the first two months when shipments were satisfactory, appellee thought his profits on the goods so supplied were $1,000 per month, based on a thirty percent mark-up. At the time the contract was made McClendon owned a stock of hardware worth $4,000, sale of which was consented to by appellant's representatives who knew that McClendon was not buying exclusively from the Corporation.

*First.—Construction of the Contract.*—An initial prejudicial error was made by the trial court in overruling the defendant's petition that the cross-complaint be made more definite and certain by stating what merchandise was ordered, when ordered, and what specific profits the cross-complainant would, with reasonable certainty, have realized from sales; but, in view of our construction of the contract and the relationship established under it, the judgment for damages must be reversed and the cause dismissed on the ground that a want of good faith in supplying merchandise was not shown. While testimony given by McClendon and appellant's manager is in conflict respecting availability of certain

items, and this Court does not have judicial knowledge that a particular thing could or could not have been procured at any time during the last half of 1946, the parties did not, in their contract, provide for damages.

Briefly, the agreement was that McClendon would operate a place of business at Benton in a building to be approved by appellant, all advertising matter and media of identification to be "Arkansas Stores, Associate Dealer." All sales agreements, franchises, and contracts with suppliers were to run in the name of and become the exclusive property of the Corporation. Paragraphs 4, 5, and 6 read: (4) "[McClendon] agrees to make all purchases of merchandise for resale from [the Corporation]. No purchases of merchandise for resale are to be made direct from suppliers. (5) [The Corporation] agrees to sell [McClendon] at its net cost, including freight and other charges. (6) [McClendon] shall not be required to purchase any merchandise not wanted."

The question is whether language in paragraph four wherein McClendon agrees "to make all purchases" from the Corporation, and the Corporation's consent in paragraph five "to sell [McClendon] at its net cost" bind the Corporation to do more than it did to supply merchandise. Each was equally interested in maintaining a steady flow. The Corporation made ten percent on all goods accepted by McClendon, and, according to McClendon, he realized approximately thirty percent on consumer sales. There is evidence that McClendon bought hardware and some other merchandise where he could get it—this with appellant's knowledge. McClendon testified he had seen, displayed in other Associate Dealer Stores,—particularly at Conway, Hot Springs, and in North Little Rock—bicycles, washing machines, and other demand goods he could have sold if appellant had not negligently failed to supply them.

Assuming, without deciding, that the contract was intended to be appellant's assurance it would furnish all of McClendon's merchandising wants, there is nothing to indicate that failure *in any and all events* to meet these demands would give rise to a cause of action. The fact

that appellee saw bicycles, washing machines, radios, etc., in other Associate Dealer Stores is not substantial testimony that appellant wrongfully refused to have the same kind of goods sent to appellee, or that they could have been supplied in quantities even measurably approaching the maximum sales upon which the damage claim is predicated. Let it be said that some of the desired items were seen in North Little Rock, Hot Springs, and Conway, and that a *few* could have been sent to appellee; still we are faced with a situation where if the judgment for $2,500 on the cross-complaint should be sustained because appellee was ignored, he must have received $8,330 worth of the named articles if the mark-up were 30%, and all of the goods had been received and sold. There is no proof to support this conclusion, and the verdict was highly speculative and conjectural; nor is the situation one requiring that the right of retrial be accorded. Had the motion to make more definite and certain found affirmative response, appellant could have been prepared to meet the allegations of negligent failure, and competent proof of loss directly traceable to appellant might have been shown. In these circumstances a construction of paragraphs five and six would have been necessary.

*Second.—Appellant's Original Demand.*—Appellee was not required to pay the full demand of $1,233.32 if unauthorized goods for which he had not settled were shipped him and their return refused. Each party to the controversy testified to opposing facts in two respects: (a) Appellant justified its action on the ground that the goods tendered had been paid for and that other items subject to return were left at an unauthorized place; (b) Appellee contended that returns had formerly been left at 555 and accepted, and that he was not currently chargeable with any of the entries constituting the maximum demand. The jury had a right, on competent evidence, to say whether appellant's action in crediting shipments left at 555 established a custom justifying appellee's conduct.

From the judgment alone we cannot determine what the jury's findings were. It may have thought appellant was entitled to the claimed balance of $1,233.32, but that

appellee had been damaged to the extent of $3,733.32. Had credit been allowed for the first item, net damages under the cross-complaint would be $2,500. This phase of the controversy is remanded, with directions that the issue be retried on the plaintiff's original cause of action.